The next case of the day, United States v. Anthony Lomax, No. 17-2440. Mr. Garcia? Good morning. Mario Garcia, CJA Counsel for Appellant Anthony Lomax. I'd like to have a brief conversation with the court today about the two issues that we raised on appeal. The first is whether or not the district court made explicit and sufficient findings with respect to the amount of drugs or the weight that was applied to Mr. Lomax's sentencing guideline calculation, and two, whether that weight was foreseeable to him. The second issue is whether Indiana's attempted murder statute, for which Mr. Lomax had been previously convicted, qualifies him as a career offender. Briefly, this case is back up on appeal after he was originally convicted of conspiracy and a number of possession with intent to distribute counts of heroin. The case went up on appeal, and it was reversed and remanded back to the district court, finding that the district court had failed to offer a buyer-seller instruction and that the evidence was in equipoise as to whether or not Mr. Lomax was merely a buyer-seller on one hand or was part of the conspiracy. With regard to weight, we believe the district court failed to make explicit findings as to the- Can I just back you up there for a second, Mr. Garcia? I thought the original reversal was for failure to give an instruction, the buyer-seller instruction. Correct. Right. That is, the district court had before it sufficient evidence to find conspiracy, but there was also some evidence the other way, and in essence, we said it's got to be a jury question. Yes. Okay. Thanks. And to that end, obviously, there was evidence that showed Anthony was in competition with Brandon Lomax. Anthony had different customers than Brandon Lomax. Anthony would buy from DeMond as well as from Brandon, and Brandon and DeMond were both convicted of the conspiracy, and so when we look at the district court's decision at resentencing, we believe that there were not explicit findings as to the amount of weight that should be applicable to Anthony. His possession counts were only about 60-some grams, but because of the overarching conspiracy of which he wasn't convicted of because the U.S. Attorney's Office dismissed that count and proceeded with only resentencing him on the possession with intent to distribute counts, we think that the connection to that large weight, that substantial weight, is far more tenuous, and when you look at the district court's findings at resentencing, Judge Barker merely said, well, I remember this colloquy. I'm going to incorporate by reference my prior findings into these findings here and find that the 16 kilograms still applies. We believe that's erroneous and that she should have made new explicit findings once the government had dismissed the conspiracy count and only proceeded with resentencing on the possession with intent to distribute counts. Moreover, with respect to the foreseeability, we believe that, again, the lens has changed and that Judge Barker should have looked at the evidence, knowing now that the conspiracy count has been dismissed, making this connection to the conspiracy more tenuous, and reevaluated whether or not it was foreseeable to Anthony Lomax that 16 kilograms of heroin was involved as part of the overall case. We don't believe that that was done here, that it was erroneous, and for those reasons and the reasons, obviously, that would be set forth in our brief, we think that the conviction, I'm sorry, the sentence should be reversed and remanded for resentencing on that issue. Is there some lesser amount? Well... Some would be less than 16, but maybe 10 or something? Yeah, so what we proposed, if you will, at resentencing was that we felt it could be When you add up, when you do the math based on the evidence at trial of the gram quantities that Anthony Lomax was distributing regularly to one of his customers two or three times a week, if you extrapolated the math there, we thought it could be closer to one kilogram. In fact, we suggested that at resentencing, but the district court found otherwise. Mr. Garcia, to change the guideline range here, do you need to prevail on both of these issues? No. I believe that one or either issue would result in a resentencing here, that the weight dramatically increases and was taken into account under, I believe, 3553A when the judge was determining what the appropriateness of the sentence was. But with respect to the career offender, if the career offender finding stands, does the change in the quantity affect the guideline range? Yeah. I believe it is because, and I'd have to go back and look, and I'm happy to provide some additional writings to the court on the matter, but I believe the career offender raised his weight was a 39 or 42. I don't remember exactly. The government has told us that the guideline range would have been 360 to life under either scenario. And I think that is potentially correct, but I think if the court is looking at under 3553A, what sentence to give Mr. Lomax, if it finds he was part of, and 16 kilograms of weight, which is a lot of heroin, should be applied to him in fashioning a reasonable sentence, I think there's a different potential outcome and certainly a different argument than if it's 60 grams or even up to a kilogram, as we had suggested. Second issue, regarding the conviction for attempted murder in Indiana. Certainly recognize that there's been a number of opinions that have been issued after Mr. Lomax was convicted and after he filed his appeal. In fact, the court requested some additional authority on the matter and we provided that. We're here on an issue of first impression. It is a de novo review. We believe that Indiana's attempted murder does not require the use of force or physical violence for the reasons that we've set forth in our materials. How are, what do Indiana pattern jury instructions say about an attempted murder? With regard to? What must be intended? Well, obviously the elements of the offense, the knowing or intentional killing of another person. I don't require, I don't recall the specific pattern jury instruction and whether there's any additional elements, but obviously those are the elements set forth in the statute. So you have to intend to do that. Correct. So intend all of the elements of the completed offense. Well, we're talking about attempted murder. Exactly. So I think there has to be a substantial step towards them, yes. And the substantial step does not have to be violent itself. No. But you have to intend violent force to kill somebody. To kill someone. Right. Well, you have to intend to kill someone. In the Indiana murder statute, there's not the element of use of force. So you're arguing for the non-violent poisoning option or what? Right. So I think when we look at the definition of physical violence, we look at power, pressure, or violence that's directed at someone, and I think implied that is the use of force or the decision to take some act rather than the withholding. So we believe that based on, if you were to withhold something from someone which would bring about their death, that you could intend to kill them but not have taken a violent act. Is there Indiana case law on that? So withholding of assistance, for example, is murder? Sure. So the case we did cite was the poisoning case. And I realize there's authority that... I'm not aware of a case that has come about yet. An example if I could offer, which could occur in theory, is if you had denied someone oxygen, for example. You had withheld oxygen from them knowing that they need oxygen to survive. Has anybody been prosecuted for homicide in Indiana for that? Not that I'm aware of. Thank you. Okay. Thank you, Mr. Garcia. Let's see. Mr. Reitz. For the government. May it please the court, Brian Reitz for the United States. I'd just like to clear up a couple questions. Judge Hamilton, first of all, in Indiana, for attempted murder, the state has to prove specific intent to murder. That's under the Spradlin line of cases from the Indiana Supreme Court. So for attempt in Indiana, attempted murder, it's specific intent to kill. And the government is aware of, and Mr. Lomax has cited no case where it's been anything like failure to withhold. I think the best case that Mr. Lomax has cited is poison, which of course is an argument precluded by Castleman in this court's precedence. Moving on to the sentencing, Judge Hamilton, the question was about Mr. Lomax's sentencing guideline range. The career offender, even without the career offender, it's still 360 to life. Sorry, slow down a second. Without the career offender, Mr. Lomax would still be 360 to life. Okay. What about without the full 16 kilos? With the career offender? Yes. Or with career offender, even if he went down to between 3 and 10 kilograms, it would still be 360 to life. So to show any harm, Mr. Lomax has to disprove the career offender and get below 3 kilograms. And even that, if it's less than 3 kilograms with the career offender, his guideline range it lowers, but still 324 to 405, in which case his 400 month sentence is squarely within that. So I think Mr. Lomax has to show essentially two things to show any harm, and he has to not only two things. Well, if you can lower the range, though, we usually require resentencing in those cases, right? Understandable, but to be clear, that would require Mr. Lomax to show that he's not a career offender, which of course requires showing that attempted murder is not a crime of violence when it's an enumerated offense, and showing that the district court clearly erred in the drug calculation. And last thing, I would like the government to point out that, yes, when the court remanded, the court only said that there was sufficient evidence for the jury instruction to be given, therefore it would be a question of fact. For the fact finder in here, at sentencing, the district court stood in the shoes of the for the relevant conduct of the conspiracy, and we think there's sufficient evidence to sustain that on that point. If there are no further questions, the government would thereby rest on its brief. Thank you, Mr. Wrights. Thank you. Mr. Garcia, anything further? Nothing further, Your Honor. All right, Mr. Garcia, you took this case by court appointment, correct? Yes, Your Honor. Thank you very much for the assistance you've given both the court and your client, and our thanks to the government counsel as well. We'll move on to the sixth case.